FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

BRAD TSCHIDA,
*Plaintiff-Appellant*,

v.

JONATHAN MOTL, in his personal capacity; JEFF MANGAN, in his official capacity as the Commissioner of Political Practices,
*Defendants-Appellees.*

No. 18-35115

D.C. No.
6:16-cv-00102-BMM

OPINION

Appeal from the United States District Court
for the District of Montana
Brian M. Morris, District Judge, Presiding

Argued and Submitted December 7, 2018
Seattle, Washington

Filed May 29, 2019

Before: William A. Fletcher and Jay S. Bybee, Circuit
Judges, and Larry A. Burns,* Chief District Judge.

Opinion by Judge W. Fletcher

---

* The Honorable Larry A. Burns, Chief United States District Judge
for the Southern District of California, sitting by designation.

## SUMMARY[**]

The panel reversed the district court's summary judgment in favor of defendant Montana state officials and affirmed the district court's summary judgment granting qualified immunity to Montana's former Commissioner of Political Practices in an action brought by Montana State Representative Brad Tschida challenging, on First Amendment grounds, a Montana law which prohibits public disclosure of an ethics complaint lodged with Montana's Commission of Political Practices until the Commission decides either: (1) to dismiss the complaint as frivolous, failing to state a potential violation, or lacking in sufficient allegations, or (2) to allow the complaint to proceed to hearing. *See* Mont. Code Ann. § 2-2-136(4).

The district court held that the challenged confidentiality requirement of § 2-2-136(4), prohibiting a complainant from revealing his ethics complaint during the confidentiality period, violated the First Amendment as to Governor Bullock and other elected officials in Montana. The court enjoined its enforcement as to such officials. The court held that the requirement did not violate the First Amendment as to Director of the Department of Commerce and other unelected officials in Montana. The court refused to enjoin its enforcement as to these officials. Finally, the district court refused, based on qualified immunity, to award damages against former Commissioner Jonathan Motl.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel reversed the district court's decision that the law was constitutional as applied to unelected public officials. Applying strict scrutiny, the panel held that that Montana Code Annotated § 2-2-136(4) facially violates the First Amendment. The panel held that although the protection of certain kinds of personal information about unelected public employees was a compelling interest, the confidentiality provision of § 2-2-136(4) was not narrowly tailored to serve that interest.

The panel affirmed the district court's judgment in favor of former Commissioner Motl on the basis that he was entitled to qualified immunity. The panel held that under the circumstances, it was not unreasonable for Commissioner Motl to rely on the constitutionality of Montana's duly enacted confidentiality statute.

**COUNSEL**

Matthew G. Monforton (argued), Monforton Law Offices PLLC, Bozeman, Montana, for Plaintiff-Appellant.

J. Stuart Segrest (argued), Assistant Attorney General; Dale Schowengerdt, Solicitor General; Timothy C. Fox, Montana Attorney General; Office of the Attorney General, Helena, Montana; Andres Haladay (argued), Drake Law Firm PC, Helena, Montana; for Defendants-Appellees.

Joseph Terran Hause (argued) and Cheannie Kha, Certified Law Students; Eugene Volokh, Supervising Attorney; Scott & Cyan Banister First Amendment Clinic, UCLA School of Law, Los Angeles, California; for Amici Curiae Marion B.

Brechner First Amendment Project and Pennsylvania Center for the First Amendment.

---

**OPINION**

W. FLETCHER, Circuit Judge:

Montana law prohibits public disclosure of an ethics complaint lodged with Montana's Commission of Political Practices ("COPP") until the COPP decides either: (1) to dismiss the complaint as frivolous, failing to state a potential violation, or lacking in sufficient allegations, or (2) to allow the complaint to proceed to hearing. Once the COPP reaches a decision, the prohibition against public disclosure of the complaint is lifted. *See* Mont. Code Ann. § 2-2-136(4).

Montana State Representative Brad Tschida lodged an ethics complaint against the Governor and an unelected official, the Director of the Department of Commerce. Before the COPP decided whether to dismiss the complaint or allow it to proceed to hearing, Tschida publicly revealed his complaint in violation of § 2-2-136(4). Jonathan Motl, then the Commissioner of the COPP, publicly threatened Tschida with criminal prosecution. The COPP later dismissed Tschida's ethics complaint for failure to state a claim and as frivolous.

Tschida brought suit in federal district court under 42 U.S.C. § 1983 against Jeff Mangan, the current Commissioner of the COPP, and Jonathan Motl, the former Commissioner, contending that § 2-2-136(4) violates the First Amendment. Tschida sought injunctive relief against Commissioner Mangan and damages against former

Commissioner Motl.  The district court held unconstitutional the challenged confidentiality provision of § 2-2-136(4) as to the Governor and enjoined its enforcement as to elected officials.  The court held the provision constitutional as to unelected officials in Montana, including the Director of the Department of Commerce, and refused to enjoin its enforcement as to such officials.  The court dismissed the damages claim against former Commissioner Motl based on qualified immunity.

Representative Tschida timely appealed.  Commissioner Mangan did not appeal.  For the reasons that follow, we reverse in part and affirm in part.

## I.  Background

As relevant to this case, the Montana Code of Ethics applies to Montana legislators, officers, and employees of state government.[1]  *See* Mont. Code Ann. § 2-2-103(4)(i).  Enforcement is governed by § 2-2-136.  Any person may submit an ethics complaint to the Commissioner of Political Practices alleging that a state legislator, officer, or employee has violated or is violating the ethics code.  *See* § 2-2-136(1).  Section 2-2-136(4), the confidentiality provision at issue, provides in relevant part:

---

[1] We have been informed by a letter from the State Attorney General that the Montana Code of Ethics has been amended, with an effective date of October 1, 2019, so that it imposes a confidentiality obligation only with respect to public employees and unelected public officers.  While the amendment may affect future cases, it does not affect the appeal now before us.

Except for records made public in the course
of a hearing held under subsection (1) and
records that are open for public inspection
pursuant to Montana law, a complaint and
records obtained or prepared by the
commissioner in connection with an
investigation or complaint are confidential
documents and are not open for public
inspection. *The complainant and the person
who is the subject of the complaint shall
maintain the confidentiality of the complaint
and any related documents released to the
parties by the commissioner until the
commissioner issues a decision.*

(Emphasis added.) A "decision" within the meaning of § 2-2-136(4) is the Commissioner's decision to dismiss a complaint or to accept it for filing. § 2-2-136(1)(b)–(c). "In practice, a dismissal or an acceptance of a complaint is made at a single point in time." *Tschida v. Bullock and O'Leary*, No. COPP 1016-ETH-005 at 9 n.18 (Nov. 21, 2016). As soon as the decision is made whether to dismiss a complaint or to accept it for filing, the confidentiality requirement of § 2-2-136(4) is lifted.

There is nothing in § 2-2-136(4) that forbids a complainant from revealing during the confidentiality period the factual (or allegedly factual) information that is contained in the ethics complaint. Nor is there anything in § 2-2-136(4) that forbids a complainant from revealing during the confidentiality period that he or she has submitted a complaint to the Commissioner. The only thing forbidden to a complainant during the confidentiality period is revealing

the complaint itself and any "related documents released to the parties by the commissioner."

On September 9, 2016, Montana State Representative Brad Tschida signed an ethics complaint alleging that Governor Steve Bullock had improperly bestowed a gift on Director of the Department of Commerce Meg O'Leary by allowing her to accompany him on a state-paid flight to Missoula to attend a concert at the invitation of the President of the University of Montana. It also alleged that Governor Bullock had improperly used Democratic Governors Association funds to pay Director O'Leary's travel and lodging expenses when they traveled together to Puerto Rico. The next day, a spokesman for Governor Bullock denied that the Governor had ever been to Puerto Rico. Nine days later, on September 19, Representative Tschida submitted the complaint to the Commissioner. That same day Commissioner Motl sent a letter to Representative Tschida asking for information that would support the allegation that Governor Bullock and Director O'Leary had traveled together to Puerto Rico. On September 21, Representative Tschida submitted an amended complaint containing three counts, all related to the concert. The amended complaint omitted the earlier allegations concerning travel to Puerto Rico. However, documents attached to the complaint alleged that a trip to Puerto Rico had occurred. That same day, Commissioner Motl sent a letter to Representative Tschida acknowledging receipt of the amended complaint.

In both of his letters, Commissioner Motl warned Representative Tschida, in almost identical wording, of the confidentiality requirement of § 2-2-136(4). He wrote in his September 21 letter:

I ask that you continue to note that this Office, as well as the Complainant and Respondents, is required to keep the COPP action on an ethics proceeding confidential so long as the Matter remains within the agency, as directed by § 2-2-136(4), MCA. That means the Complaint, as well as documents like this letter will not appear on the Commissioner's website or be available for public inspection unless some later action opens the documents to the public.

On November 2, six days before a general election in which Governor Bullock was a candidate, Representative Tschida disclosed his amended ethics complaint to members of the Montana House of Representatives in an attachment to an email. He also attached to the email a cover letter accusing the Commissioner of purposely delaying a decision on his complaint.

On November 3, during a radio interview, Commissioner Motl answered questions about Representative Tschida's disclosure of the complaint. He said, "Mr. Tschida, as a sitting legislator, chose to violate a specific section of [a] state statute and he did it in the last days of a campaign, which I think magnifies the seriousness of what he did." Commissioner Motl said violation of the confidentiality requirement was "official misconduct." The interviewer asked whether this would give rise to a civil claim. Commissioner Motl responded, "No. It's criminal court." No criminal charge was ever brought against Representative Tschida.

Commissioner Motl dismissed Representative Tschida's ethics complaint on November 21, 2016. He dismissed the first two counts as barred by the statute of limitations, he dismissed all three counts for failure to allege claims, and he also dismissed all three counts as frivolous. Representative Tschida did not appeal the dismissal of his ethics complaint.

Commissioner Motl later explained in an affidavit the delay in issuing the dismissal. He wrote:

> [] I received a response from Governor Bullock refuting the Puerto Rico allegations around 5 pm on September 28, 2016.

> [] The month before an election is the busiest time for the COPP. The COPP had declared its commitment to resolving campaign finance complaints in "real time," that is before the date of the election.

> [] Between September 29, 2016 and election day (November 8, 2016), the COPP was focused on addressing campaign finance complaints, so that the allegations made in the campaign complaints, which are public, could be addressed by the election. During this time period:

> a. The COPP issued 14 campaign finance decisions, all responding to complaints filed between September 27 and October 28, 2016. . . . ;

b.  The COPP issued one advisory opinion concerning a state contractor's political rights . . . ;

c.  The COPP prepared for and held a full day ethics hearing (on October 21, 2016) on a pending ethics complaint. . . . This ethics hearing had been scheduled months in advance;

d.  The COPP engaged in extensive motion and argument in state district court regarding a request for [a] stay on a campaign finance judgment . . . ;

e.  The COPP resolved 7 campaign practice sufficiency decisions through settlement;

[f.]  All COPP office staff, in particular the Commissioner, responded to daily campaign-related concerns or questions from candidates, the press and the public.

On November 4, Representative Tschida filed a complaint in federal district court against Commissioner Motl, alleging that the prohibition against revealing his ethics complaint violated the First Amendment.  A second amended complaint, filed on June 16, 2017, is the operative complaint.  Jeff Mangan is now the Commissioner.  Representative Tschida sought injunctive relief against Commissioner Mangan in his official capacity.   He sought damages against former Commissioner Motl in his personal capacity.

On summary judgment, the district court held that the challenged confidentiality requirement of § 2-2-136(4), prohibiting a complainant from revealing his complaint during the confidentiality period, violated the First Amendment as to Governor Bullock and other elected officials in Montana. The court enjoined its enforcement as to such officials. The court held that the requirement did not violate the First Amendment as to Director of the Department of Commerce O'Leary and other unelected officials in Montana. The court refused to enjoin its enforcement as to these officials. Finally, the court refused, based on qualified immunity, to award damages against former Commissioner Motl.

Representative Tschida timely appealed to this court. Commissioner Mangan did not appeal. Representative Tschida's appeal presents two questions. First, is the challenged portion of the confidentiality requirement of § 2-2-136(4) constitutional as to complaints against unelected officials? Second, was the damages claim against former Commissioner Motl properly dismissed based on qualified immunity?

## II. Standard of Review

"We review *de novo* a district court's grant of summary judgment, considering the record in the light most favorable to the non-moving party." *King v. Cnty. of L.A.*, 885 F.3d 548, 556 (9th Cir. 2018) (citing *Jones v. Blanas*, 393 F.3d 918, 922 (9th Cir. 2004)).

## III.  Discussion

### A.  Constitutionality of Confidentiality Requirement

#### 1.  Level of Scrutiny

We begin by addressing the level of scrutiny that applies to the challenged confidentiality requirement of § 2-2-136(4). Whether we apply strict or intermediate scrutiny depends on whether the law is content-based or content-neutral. "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015).  A law may also be content based if it requires authorities to examine the contents of the message to see if a violation has occurred.  *See McCullen v. Coakley*, 573 U.S. 464, 479–80 (2014).  Even a facially content-neutral law may be considered content-based if it "cannot be 'justified without reference to the content of the regulated speech,'" *Reed*, 135 S. Ct. at 2227 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)), or is justified by a concern that "stem[s] from the direct communicative impact of speech," *Lind v. Grimmer*, 30 F.3d 1115, 1118 (9th Cir. 1994).

The speech at issue here is very similar to the speech in *Lind*, where a Hawai'i statute required that complaints to Hawai'i's Campaign Spending Commission remain confidential while an investigation was pending, and required that the entire record of an investigation remain confidential if the Commission determined after investigation that there was no probable cause that a violation had occurred.  We wrote, "A statute regulating speech is content-neutral only if the state can justify it without reference either to the content

of the speech it restricts or to the direct effect of that speech on listeners." *Id.* at 1117. Hawai'i justified its confidentiality requirement on a number of grounds, including "prevent[ing] the Commission's credibility from being invoked to support 'scandalous charges,'" and "prevent[ing] candidates and their supporters from being 'unduly tarred by a vindictive complaint.'" *Id.* at 1117–18. We wrote in *Lind*, "Because these concerns . . . stem from the direct communicative impact of speech, we conclude that [the Hawai'i statute] regulates speech on the basis of its content." *Id.* at 1118. The confidentiality provision of the Hawai'i statute swept more broadly and lasted longer than the challenged confidentiality provision of Montana's § 2-2-136(4), but the underlying rationales are largely the same. *See also Stilp v. Contino*, 613 F.3d 405, 413 (3d Cir. 2010) (applying strict scrutiny to Pennsylvania's ethics confidentiality law); *Kamasinski v Judicial Review Council*, 44 F.3d 106, 110 (2d Cir. 1994) (concluding that Connecticut's ethics confidentiality law was content-based).

We therefore conclude that strict scrutiny applies to the challenged confidentiality provision of § 2-2-136(4). Section 2-2-136(4) is constitutional "only if it is narrowly drawn and is necessary to serve a compelling state interest . . . or if the speech it regulates otherwise is undeserving of full protection[.]" *Lind*, 30 F.3d at 1118.

## 2. Application of Strict Scrutiny

The State asserts that it has a compelling interest in protecting the privacy of unelected employees in matters related to their employment, including the disclosure of "sensitive information in personnel files, such as health records, disciplinary reports, and past illegal drug use."

We agree that the State has a compelling interest in protecting certain kinds of private information about unelected officials. The Supreme Court has long "assume[d], without deciding, that the Constitution protects a privacy right" in certain kinds of employee information. *NASA v. Nelson*, 562 U.S. 134, 138 (2011); *see also Whalen v. Roe*, 429 U.S. 589, 599 (1977) (acknowledging an "individual interest in avoiding disclosure of personal matters"). Indeed, in *Nixon v. Administrator of General Services*, the Supreme Court recognized that "public officials, including the President, are not wholly without constitutionally protected privacy rights in matters of personal life unrelated to any acts done by them in their public capacity." 433 U.S. 425, 457 (1977). While it is true that state employees serve in positions of public trust, they are still constitutionally entitled to some level of privacy related to personal matters. If even the President has some privacy right in personal matters, it follows that unelected state officials and employees have important privacy interests in certain kinds of personal information. Unlike elected officials, who possess "no privacy interest in freedom from accusations," and must endure a heightened level of criticism, unelected officials have not injected themselves into public debate. *In re McClatchy Newspapers Inc.*, 288 F.3d 369, 373 (9th Cir. 2002).

We have recognized as much in a number of our own cases. We have identified particular kinds of information that fall within an employee's constitutionally protected interest in informational privacy. For example, in *Doe v. Attorney General*, we recognized that "medical information was encompassed within" the privacy interest in avoiding "disclosure of personal matters." 941 F.2d 780, 795 (9th Cir. 1991). Similarly, we have held that disclosure of social

security numbers "can raise serious privacy concerns" because "an individual's SSN serves as a unique identifier that cannot be changed and is not generally disclosed by individuals to the public." *In re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999).

Having concluded that the protection of certain kinds of personal information about unelected public employees is a compelling interest, we next turn to whether the confidentiality provision of § 2-2-136(4) is narrowly tailored to serve that interest. We conclude that it is not.

The challenged confidentiality requirement of § 2-2-136(4) prohibits a complainant from revealing the complaint during the confidentiality period. Section 2-2-136(4) does not forbid a complainant from revealing factual information contained in the ethics complaint, and it does not bar a complainant from revealing that he or she submitted a complaint to the Commissioner. A complainant is only forbidden from revealing the complaint itself and any "related documents released to the parties by the commissioner." Mont. Code Ann. § 2-2-136(4). And the complainant is forbidden from revealing the complaint and other documents only until the Commissioner makes a decision whether to dismiss the complaint or accept it for filing. Once that decision is made, the confidentiality requirement is lifted.

The confidentiality provision of § 2-2-136(4) is overbroad and, at the same time, largely ineffectual in protecting employees' privacy interests. It is overbroad in that it prohibits revealing an ethics complaint in its entirety, irrespective of its content. There is no attempt in the provision to distinguish between constitutionally protected personal information and information that may be revealed

without violating the Constitution.  It is largely ineffectual, in that the confidentiality provision protects that private information for a very limited time.  Prior to lodging the complaint, the complainant is free to share the draft complaint, meaning that any private information contained in the complaint would be available to the public.  Furthermore, while the complaint itself may not be revealed, the confidentiality provision allows a complainant to discuss the facts (or alleged facts) contained in the ethics complaint at any time.  This includes discussion of any private information in the complaint.

The confidentiality provision is so weak that we have difficulty seeing that it serves any state interest at all.  Severe underinclusiveness renders the confidentiality provision unconstitutional.  *See Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 104–105 (1979) (striking down a statute that prohibited newspapers, but not electronic media, from publishing the names of juvenile defendants because the law failed to advance the stated privacy interest); *Williams-Yulee v. Florida Bar*, 135 S. Ct. 1656, 1668 (2015) (explaining that underinclusiveness may "reveal that a law does not actually advance a compelling interest"); *see also Reed*, 135 S. Ct. at 2231–32 (striking down an ordinance on tailoring grounds because it was "hopelessly underinclusive"); *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 802 (2011) (striking down a statute prohibiting sale of violent video games to minors because the law was underinclusive).

In sum, the confidentiality provision of the Montana Code of Ethics is not narrowly tailored to serve a compelling state interest.  It does not survive strict scrutiny and is facially unconstitutional.

## B. Qualified Immunity

Representative Tschida contends that the district court improperly dismissed his damages claim against Commissioner Motl based on qualified immunity. We have held that "an officer who acts in reliance on a duly-enacted statute or ordinance is ordinarily entitled to qualified immunity." *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994). Under these circumstances, liability may attach only where (1) the statute "authorizes official conduct which is patently violative of fundamental constitutional principles," or (2) the official "unlawfully enforces an ordinance in a particularly egregious manner, or in a manner which a reasonable officer would recognize exceeds the bounds of the ordinance." *Id.* at 1209–10.

Neither of these exceptions applies here. While we conclude that the rationale of *Lind* is persuasive in holding Montana's confidentiality provision unconstitutional, it was not objectively unreasonable for Commissioner Motl to conclude that *Lind* was not controlling in the circumstances of this case. The Hawaiʻi provision at issue in *Lind* swept far more broadly than the confidentiality provision of Montana's § 2-2-136(4). The Hawaiʻi provision (1) "prohibit[ed] complainants from divulging the fact that they have filed a complaint[,]" (2) prohibited third parties "from divulging anything that they might lawfully learn about an investigation[,]" and (3) required indefinite confidentiality if the Commissioner determined that there was no probable cause to support the alleged election violation. *Lind*, 30 F.3d at 1122. Because Montana's law was narrower (though insufficiently narrow), it was not objectively unreasonable for Commissioner Motl to rely on its constitutionality when he

threatened to sanction Representative Tschida for violating its confidentiality provision.

Representative Tschida argues that it was objectively unreasonable to threaten to sanction him for release of information related to the governor.  But even assuming without deciding that this is so, Commissioner Motl's threatened sanction related to the release of the complaint included allegations about O'Leary, an unelected state official.  Commissioner Motl could reasonably have concluded that O'Leary's inclusion in the ethics complaint meant that it was protected by the confidentiality provision even if release of information about the governor would not be.

In sum, it was not unreasonable for Commissioner Motl to rely on the constitutionality of Montana's duly enacted confidentiality statute, given the differences between Montana law and the law at issue in *Lind*.  Accordingly, we conclude that Commissioner Motl is entitled to qualified immunity and affirm the judgment in his favor.

## Conclusion

We hold that Montana Code Annotated § 2-2-136(4) facially violates the First Amendment.  We reverse the district court's decision that the law was constitutional as applied to unelected public officials.  We affirm the district court's decision granting Commissioner Motl qualified immunity.

**AFFIRMED IN PART** and **REVERSED IN PART.** Each party shall bear its own costs.