DA 20-0050

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 202

MATTHEW MONFORTON,

      Petitioner and Appellant,

    v.

JONATHAN MOTL,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                  In and For the County of Gallatin, Cause No. DV-19-224AX
                  Honorable Rienne H. McElyea, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Matthew G. Monforton, Self-Represented, Bozeman, Montana

      For Appellee:

          Jaime MacNaughton, Attorney at Law, Helena, Montana

          Gene R. Jarussi, Heenan & Cook, Billings, Montana

                       Submitted on Briefs:  July 1, 2020

                                 Decided:  August 11, 2020

Filed:

                           _____
                                  Clerk

FILED

08/11/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0050

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1  Appellant Matthew Monforton (Monforton) appeals a December 17, 2019, order from the Eighteenth Judicial District Court, Gallatin County, denying his petition for judicial review of a final agency decision by the office of the Commissioner of Political Practices (COPP).  The COPP's decision dismissed an ethics complaint that Monforton had lodged against Appellee Jonathan Motl (Motl) based on statements that Motl had made during a radio interview.  We restate the dispositive issue on appeal as follows:

> *Was the Deputy COPP's conclusion of law correct that there was a reasonable interpretation for Motl's statements other than that they were made to solicit opposition to a candidate for public office?*

¶2  We conclude that Motl's statements did not violate § 2-2-136(4), MCA (2015), of the Montana Code of Ethics.  Accordingly, we affirm the District Court's order denying Monforton's petition for review.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3  On September 19, 2016, Representative Brad Tschida (Tschida), a member of the Montana House of Representatives from a Missoula legislative district, lodged an ethics complaint with the COPP against Governor Steve Bullock and Meg O'Leary, the former Director of the Montana Department of Commerce.  On September 21, 2016, Tschida filed an amended ethics complaint against Bullock and O'Leary.  In the time since Tschida's amended complaint was filed, Tschida has admitted that one of its claims—specifically, the complaint's allegation that Governor Bullock accepted improper benefits from the

2

Democratic Governors Association—was "more speculative in nature" and "couldn't be 100 percent corroborated."[1]

¶4 Motl held the position of COPP at the time Tschida's ethics complaint was lodged. In two letters dated September 19, 2016, and September 21, 2016, Motl confirmed receipt of Tschida's original and amended ethics complaints. In each letter, Motl expressly reminded Tschida of Montana's then-active confidentiality requirement for ethics complaints under § 2-2-136(4), MCA (2015), which prohibited the public disclosure of ethics complaints prior to a decision by the COPP to either dismiss the complaint or allow the complaint to proceed to a hearing. Section 2-2-136(4), MCA (2015), provided:

> [A] complaint and records obtained or prepared by the commissioner in connection with an investigation or complaint are confidential documents and are not open for public inspection. The complainant and the person who is the subject of the complaint shall maintain the confidentiality of the complaint and any related documents released to the parties by the commissioner until the commissioner issues a decision.

¶5 Despite Motl's warnings that Tschida's complaint was subject to § 2-2-136(4), MCA (2015), on the evening of November 1, 2016—before Motl had determined whether to accept or dismiss Tschida's ethics complaint—Tschida e-mailed a copy of his ethics complaint to other legislators in the Montana House of Representatives. At the time Tschida disclosed the contents of his complaint, Bullock was running for

---

[1] Tschida made this admission in an affidavit that was filed as part of his federal lawsuit against Motl, which concerned the same series of events as here. As is permitted by Rule 202(b)(6), M. R. Evid., this Court takes judicial notice of the opinions issued in *Tschida v. Mangan*, 293 F.Supp.3d 1217 (D. Mont. 2017) and the subsequent appeal in *Tschida v. Motl*, 924 F.3d 1297 (9th Cir. 2019).

re-election as governor while Tschida was running for re-election to Montana's House of Representatives. Bullock and Tschida were members of opposing political parties.

¶6 On November 3, 2016, Motl was interviewed by KGVO, a radio station in Missoula. Motl participated in the interview on public time while using public facilities and public equipment, including a state office and telephone. During the interview, Motl made the following comments:

> Mr. Tschida, by releasing an ethics complaint violated a specific section of state law to which there is no exception.
>
> .  .  .
>
> Mr. Tschida, as a sitting legislator, chose to violate a specific section of state statute and he did it in the last days of a campaign, which I think magnifies the seriousness of what he did.
>
> .  .  .
>
> And Mr. Tschida, in complete violation of the specific directions in state law to which there—I just read it to your listeners—I don't think there can be any doubt about what that law says. Released the complaint, I would presume for political purposes in the last days of a political campaign, and he doesn't have any authority to do that. His legislative status—he's not in the session, he's not speaking on the floor, there's nothing—no bill that's pending, and he has no special status as a citizen that gives him a right to decide which laws he's going to follow and laws he doesn't. And, so I think it's a . . . . That's our stance—that it's just outrageous that he did what he did at the time that he did it.

Later in the interview, the following exchange also occurred between Motl and the KGVO interviewer:

> Motl: [Tschida] has personal responsibility for his actions; and so he'll need to deal with the consequences of breaking state law.
>
> Interviewer: And what are those consequences?
>
> Motl: There's uh, the main consequence that befalls an official who, um violates a mandatory duty is official misconduct.

4

Interviewer: And that would be a charge in civil court?

Motl: No, it's criminal court.

Interviewer: It's a criminal court charge?

Motl: Yes.

Interviewer: And so will the—will your office be bringing a...

Motl: It is inappropriate for me to—to say what anything in particularly in the timing that we've got left here. And I—I simply won't do it. And I wouldn't expect anybody would consider bringing something for or against Mr. Tschida until—

Interviewer: Until after the eighth?

Motl: Yes.

The 2016 election was held on November 8, 2016—five days after Motl's radio interview and seven days after Tschida forwarded his complaint regarding Bullock to other House members. On Election Day, both Tschida and Bullock were re-elected to subsequent terms.

¶7 On November 21, 2016, Motl dismissed Tschida's ethics complaint against Governor Bullock and his former Director of Commerce. That same month, Tschida filed a federal lawsuit against Motl which alleged that Montana's confidentiality requirement for ethics complaints, contained in § 2-2-136(4), MCA (2015), violated the United States Constitution. *See Tschida v. Mangan*, 293 F.Supp.3d 1217 (D. Mont. 2017). Jeff Mangan, who replaced Motl as Montana's COPP in 2017, was also a defendant. In *Tschida v. Motl*, 924 F.3d 1297 (9th Cir. 2019), the Ninth Circuit held that § 2-2-136(4), MCA (2015), violated the First Amendment and was unconstitutional. However, that

5

decision also granted Motl qualified immunity because it was reasonable for Motl to rely on the constitutionality of a duly enacted statute.

¶8 Two years later, on November 2, 2018, Monforton lodged an ethics complaint with the COPP against Motl. Motl was no longer serving as COPP at the time Monforton's complaint was lodged. The new COPP, Jeff Mangan, recused himself from participating in the matter and appointed Robert Stutz, an Assistant Attorney General for the Montana Department of Justice, to preside over the matter as Deputy COPP.

¶9 Monforton's complaint alleged that Motl's statements to KGVO about Tschida constituted improper election advocacy in violation of the Montana Code of Ethics, Rules of Conduct for Public Officers and Employees. Specifically, Monforton's complaint alleged Motl's statements violated § 2-2-121(3)(a), MCA—an ethics rule which prohibits public officers and employees from using "public time, facilities, [and] equipment" to "solicit support for or opposition to the . . . election of a person to public office." Both parties agreed that Motl's statements were offered while using public time, facilities, and equipment. However, while Monforton's complaint alleged that Motl's statements to KGVO were made "in opposition to" Tschida's election and thereby constituted a violation of § 2-2-121(3)(a), MCA, Motl challenged this allegation and asserted that his statements were made for the purpose of "defending a statute on behalf of the people of Montana."

¶10 On February 1, 2019, the Deputy COPP dismissed Monforton's ethics complaint for failing to state a claim for a potential violation of Montana's Code of Ethics, citing § 2-2-136(1)(c), MCA (authorizing the COPP to dismiss ethics complaints that fail to state a claim). This dismissal relied on a multi-step statutory analysis which ultimately

6

determined that Motl's statements to KGVO did not constitute statements made in "opposition to" Tschida's election under § 2-2-121(3)(a). In his analysis, the Deputy COPP noted that the Montana Code of Ethics does not define the terms "support" or "oppose" as they appear in § 2-2-121(3)(a). However, the Deputy COPP cited § 1-2-107, MCA (titled "Applicability of definitions"), in order to properly apply the relevant definition that appeared elsewhere in the Montana Code. *See* § 1-2-107, MCA ("Whenever the meaning of a word or phrase is defined in any part of this code, such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears."). The Deputy COPP's decision turned on the definition of "support or oppose" as it appears in Title 13—"Elections"—of the Montana Code Annotated, citing § 13-1-101(50)(b), MCA, which provides that:

> "Support or oppose," including any variations of the term, means . . . otherwise referring to or depicting one or more clearly identified candidates, political parties, or ballot issues in a manner that is susceptible of no reasonable interpretation other than as a call for the nomination, election, or defeat of the candidate in an election, the election or defeat of the political party, or the passage or defeat of the ballot issue or other question submitted to the voters in an election.

Under the plain text of § 13-1-101(50)(b), the Deputy COPP dismissed Monforton's complaint on the basis that Motl's statements to KGVO did not meet the proper definition of "oppose" because they could reasonably be interpreted as being made in defense of a statute that was still in effect at the time of Motl's interview—specifically, § 2-2-136(4), MCA (2015). In reaching this decision, the Deputy COPP made the following conclusion of law:

7

Mr. Motl's statements did not constitute "opposition" to Rep. Tschida's re-election as that term is defined in Mont. Code Ann. § 13-1-101(50) because those statements were susceptible to multiple, reasonable interpretations, which excludes the statements from the definition of "opposition" pursuant to Mont. Code Ann. § 13-1-101(50)(b). By definition, and as a matter of law, Mr. Motl's statements did not constitute improper election advocacy in opposition to the re-election of Rep. Tschida, even though some individuals may reasonably have interpreted the statements to oppose Rep. Tschida's re-election.

¶11 On March 1, 2019, Monforton filed a Petition for Judicial Review of a Final Agency Decision (Monforton's petition) with the District Court to contest the Deputy COPP's dismissal of his ethics complaint. Monforton's petition conceded that the Deputy COPP correctly applied § 13-1-101(50)(b)'s definition of "oppose" in order to determine the meaning of "opposition" under § 2-2-121(3)(a). However, Monforton's petition alleged that the Deputy COPP erred by concluding that Motl's November 2016 statements did not constitute "opposition" as defined by § 13-1-101(50)(b), MCA. Instead, Monforton's petition argued that Motl's statements to KGVO were made "in such a manner that was susceptible of no reasonable interpretation other than as a call for the defeat of Rep. Tschida in the election," thereby falling within § 13-1-101(50)(b)'s definition of "opposition."

¶12 On December 17, 2019, the District Court issued its order denying Monforton's petition, concluding that the Deputy COPP correctly interpreted § 13-1-101(50)(b) and did not err in finding that Motl's statements could reasonably be interpreted as being made in defense of Montana's former confidentiality statute governing ethics complaints, § 2-2-136(4), MCA (2015).

¶13 Monforton appeals.

8

**STANDARD OF REVIEW**

¶14 The Montana Administrative Procedure Act (MAPA) governs judicial review of a final agency decision by the COPP. *Mont. Fish, Wildlife & Parks v. Trap Free Mont. Pub. Lands*, 2018 MT 120, ¶ 11, 391 Mont. 328, 417 P.3d 1100 (citing *Williamson v. Mont. Pub. Serv. Comm'n*, 2012 MT 32, ¶ 25, 364 Mont. 128, 272 P.3d 71). MAPA, § 2-4-704(2)(a)(i)-(vi), MCA, stipulates that a reviewing court may reverse or modify an agency's decision "if substantial rights of the appellant have been prejudiced" because:

> (a) the administrative findings, inferences, conclusions, or decisions are:
> (i) in violation of constitutional or statutory provisions;
> (ii) in excess of the statutory authority of the agency;
> (iii) made upon unlawful procedure;
> (iv) affected by other error of law;
> (v) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;
> (vi) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

¶15 Under MAPA's provided framework, a district court "reviews the agency's decision to determine whether the agency's findings of fact are clearly erroneous and whether its determinations of law are correct." *Trap Free*, ¶ 11 (citing *Molnar v. Fox*, 2013 MT 132, ¶ 17, 370 Mont. 238, 301 P.3d 824). This same standard of review applies to both the district court's review of the agency decision and this Court's review of the district court's decision. *Molnar*, ¶ 17.

**DISCUSSION**

¶16 On appeal, Monforton alleges that both the District Court and Deputy COPP incorrectly interpreted § 13-1-101(50)(b)'s definition of "oppose." Specifically,

9

Monforton contends that Motl's statements to KGVO were "susceptible of no reasonable interpretation other than as an appeal to defeat Rep. Tschida at the polls."[2] Our analysis is controlled by the plain language of § 2-2-121(3)(a) and § 13-1-101(50)(b)—the statutes which Monforton agrees should govern the adjudication of his ethics complaint.

¶17 Monforton asserts that Motl's radio interview statements constituted unlawful election advocacy by a public officer, in violation of § 2-2-121(3)(a), MCA, (Montana Code of Ethics, Rules of Conduct for Public Officers and Employees). Section 2-2-121(3)(a) provides in relevant part: "a public officer or public employee may not use public time, facilities, equipment, supplies, personnel, or funds to solicit support for or opposition to any political committee, [or to] the nomination or election of any person to public office . . . ." It is undisputed that Motl's statements to KGVO were offered using public time, facilities, and equipment. However, a plain reading of this ethics statute indicates that Motl's statements must also constitute a solicitation of "opposition" to Tschida's election. If they do not, then no violation of § 2-2-121(3)(a) has occurred.

¶18 The Montana Code of Ethics, by itself, does not define the term "opposition." However, as both Monforton and Motl have acknowledged, the Deputy COPP and the

---

[2] Monforton also argues that the District Court erred by applying a deferential standard of review to the Deputy COPP's decision. Monforton maintains that the Deputy COPP's decision to dismiss his ethics complaint for failing to state a claim was a "conclusion of law" which merited a review for "correctness" by the District Court instead of deferential review for "clear error." However, the District Court's decision explicitly stated that its review was for "correctness" and cited its authority to review the Deputy COPP's decision for "error of law" under MAPA, § 2-4-704(2)(a)(iv), MCA. The District Court stated that it "accepts the Findings of Fact in the Decision Dismissing [Monforton's] Ethics Complaint as true and reviews the [Deputy COPP's] Conclusions of Law for correctness." Thus, this argument by Monforton fails, as the District Court clearly applied the correct standard of review.

10

District Court correctly invoked the language of § 13-1-101(50)(b), MCA—which defines the words "support or oppose" in the context of Montana's elections laws—in order to evaluate whether Motl's radio comments constituted unlawful "opposition" to Tschida's candidacy under § 2-2-121(3)(a). Section 13-1-101(50)(b) defines "oppose" as "depicting one or more clearly identified candidates . . . in a manner that is susceptible of no reasonable interpretation other than as a call for the . . . defeat of the candidate in an election . . . ." The plain language—"susceptible of no reasonable interpretations other than"—means that statements which can *only* be reasonably interpreted as calling for a candidate's defeat fall under § 13-1-101(50)(b)'s definition of "oppose." Conversely, statements about a candidate that are subject to an alternate reasonable interpretation will not meet this definition.

¶19 Motl's statements to KGVO asserted that Tschida had knowingly violated an ethics statute requiring that complaints lodged with Motl be kept confidential. Motl contended Tschida irresponsibly publicized his damaging allegations against an opposing party's gubernatorial candidate in the week before the gubernatorial election. Motl told the interviewer that Tschida could eventually face charges for his violation of this law but noted that it would be inappropriate for him to comment any further given the proximity to the upcoming election. The Deputy COPP and District Court agreed with Motl's argument that his statements were made in defense of a statute, § 2-2-136(4), MCA (2015), which was in effect at the time of Motl's interview and which Motl was explicitly charged with upholding as Montana's COPP. The District Court affirmed the Deputy COPP's decision and held that Motl's conduct fell outside of § 13-1-101(50)(b)'s definition of "opposition"

to Tschida's candidacy, as Motl had clearly identified a reasonable alternative interpretation of his statements to KGVO.

¶20   We agree with the reasoning of the District Court and Deputy COPP. A reasonable interpretation of Motl's statements is that they were made in defense of a statute that Motl was charged with upholding. The COPP's mission statement is "[t]o monitor and to enforce, in a fair and impartial manner, campaign practices and campaign finance disclosure . . . [and] ethical standards of conduct for legislators," such as Representative Tschida. Moreover, it is undisputed that Motl, as COPP, was charged with enforcing Montana's ethics laws for state legislators, which necessarily included § 2-2-136(4), MCA (2015). In the week before the November 2016 election, § 2-2-136(4), MCA (2015), was still in effect. Thus, the protections offered by this ethics law fell squarely within the COPP's published mission of promoting and protecting the fair conduct of legislators such as Tschida. Motl's statements, made in the context of § 2-2-136(4), MCA (2015), and his responsibility to enforce rules of conduct, have a reasonable interpretation "other than as a call for the . . . defeat of" Tschida. Motl's comments do not constitute "opposition" to Tschida's election under § 13-1-101(50)(b)'s definition because, in order for its definition to apply, Motl's opposition to Tschida's election must be the *only* reasonable interpretation of his statements. Consequently, the District Court correctly upheld the Deputy COPP's decision that no ethics violation occurred under § 2-2-121(3)(a), and the Deputy COPP lawfully dismissed Monforton's complaint for failing to state a claim.

12

¶21 Monforton opposes this conclusion and asserts that Motl's actions meet § 13-1-101(50)(b)'s definition because Motl's interview with KGVO served as a "springboard to slander Tschida . . . in a manner no voter would interpret as anything other than a call for Tschida's defeat." The District Court indeed acknowledged the Deputy COPP's position that "some individuals may reasonably have interpreted the statements to oppose Rep. Tschida's re-election." However, the plain language of § 13-1-101(50)(b) requires that the *only* reasonable interpretation of Motl's statements is that they were calling for Tschida's defeat in the upcoming election. Monforton maintains that the existence of several indirect "indicia" of opposition within Motl's statements prove that they can only be reasonably interpreted as opposing Tschida's candidacy. Nevertheless, none of Monforton's alleged "indicia" are sufficient to defeat the conclusion that Motl's radio interview statements can be reasonably interpreted as being made in defense of an ethics statute that Motl himself was categorically responsible for enforcing as COPP.

¶22 One of the indicia that Monforton argues indicates Motl made his radio statements in opposition to Tschida's candidacy centers on Motl's express reminder to listeners that Tschida was "a sitting legislator," that it was "the last days of a campaign," and that Tschida disclosed his ethics complaint "for political purposes in the last days of a political campaign." However, the transcript from Motl's interview indicates that Motl's comment that Tschida was a "sitting legislator" was made in order to emphasize that Tschida used his platform as a legislator to unlawfully distribute his complaint, constituting a serious violation of § 2-2-136(4), MCA (2015). Additionally, the context of Motl's radio interview

13

demonstrates that Motl's dual references to the "last days of a political campaign" referred to Montana's *gubernatorial* campaign, which Motl feared Tschida sought to unlawfully influence by publicizing the contents of his ethics complaint against the opposing party's gubernatorial candidate—Steve Bullock.

¶23 Monforton also argues that Motl's statements came "five days before Election Day" and that the timing of Motl's statements made them "all the more likely to be taken by voters as a call to defeat Tschida." However, it was Tschida's release of his ethics complaint just seven days before Bullock was up for re-election that prompted Motl's interview. Thus, the timing of Motl's statements is more appropriately attributable to Tschida as Tschida chose to release his complaint against Bullock in close proximity to the election. Instead, where Motl's remarks *did* discuss Tschida's re-election, Motl's statements demonstrated a hyper-awareness of the impropriety of any interference. Specifically, when Motl was prompted by the interviewer to discuss whether his office would consider pursuing criminal charges against Tschida, Motl stopped the interviewer's line of questioning and replied that it would be "inappropriate for [him] . . . to say" in light of "the timing we've got left" until the election.

¶24 Monforton also contends that Motl's comments about the possibility of Tschida facing *criminal* charges cannot be reasonably interpreted as being in defense of § 2-2-136(4), MCA (2015), which was a *civil* statute. It is undisputed that Motl's radio comments asserted that Tschida's actions may have risen to level of official misconduct, which is a Title 45 criminal statute in Montana. *See* § 45-7-401(1), MCA (stating that official misconduct occurs when a public servant "knowingly performs an act in an official

capacity that the public servant knows is forbidden by law"). Based on these statements, Monforton asserts that Motl, as COPP, "was not charged with enforcing any criminal statutes in Title 45 such as official misconduct," and thereby argues that "[n]o reasonable voter" would interpret Motl's reference to "a *criminal* statute in Title 45 as a defense of a *civil* statute in Title 2." However, actions that constitute ethics violations according to the COPP may also constitute official misconduct under Title 45. In these instances, the COPP may request a criminal investigation from the Montana Department of Justice (DOJ) in order to determine whether official misconduct has occurred. *See, e.g.*, *Marking & Fauth v. Lesnik*, COPP-2018-CFP-026 (where DOJ initiated an official misconduct investigation at the request of the COPP).

¶25 Finally, Monforton characterizes Motl's accusation that Tschida violated the law as "reckless" and "patently false." In support of this view, Monforton asserts that Tschida ultimately "did nothing wrong" in light of the Ninth Circuit's decision to strike down § 2-2-136(4), MCA (2015). *See Tschida,* 924 F.3d at 1305. However, the Ninth Circuit's decision also concluded that Motl was entitled to qualified immunity for his radio comments because "it was not unreasonable for Commissioner Motl to rely on the constitutionality of Montana's duly enacted confidentiality statute" when he "threatened to sanction Representative Tschida for violating its confidentiality provision." *Tschida,* 924 F.3d at 1305-06. The same logic applies here; thus, Motl's statements accusing Tschida of wrongdoing were neither reckless nor patently false.

**CONCLUSION**

¶26 We conclude that while some individuals may have reasonably interpreted Motl's statements as soliciting opposition to Tschida's re-election, this was not the *only* reasonable interpretation of Motl's statements, as the plain language of § 13-1-101(50)(b), MCA, requires. *One* reasonable interpretation of Motl's statements was that they were made in defense of a statute, § 2-2-136(4), MCA (2015), which was in effect at the time of Motl's interview and which Motl was expressly charged with enforcing. We affirm the District Court's decision to uphold the Deputy COPP's dismissal of Monforton's ethics complaint on the basis that Motl's statements did not constitute unlawful "opposition" to Tschida's election under § 2-2-121(3)(a), MCA, as dictated by the plain text of § 13-1-101(50)(b), MCA.

/S/ LAURIE McKINNON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON

16