NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 29 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ATEKA CALHOUN, | No.   21-15837 |
| Plaintiff-Appellant, | D.C. No. 2:19-cv-04932-SRB |
| v. | |
| ALLSTATE INSURANCE COMPANY, an Illinois corporation, | MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Submitted April 14, 2022[**]
Pasadena, California

Before:  PAEZ, SMITH,[***] and BADE, Circuit Judges.

Ateka Calhoun, a former independent contractor sales agent for Allstate

Insurance Company, appeals the district court's order granting summary judgment

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]     The Honorable D. Brooks Smith, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

in favor of Allstate. The district court had jurisdiction under 28 U.S.C. § 1332(a)(1), and we have jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's ruling on a motion for summary judgment *de novo*. *Tschida v. Motl*, 924 F.3d 1297, 1302 (9th Cir. 2019) (citation omitted). For the following reasons, we affirm.

1. The district court properly granted summary judgment in favor of Allstate on Calhoun's breach of contract claim. Calhoun argues that Allstate breached the Exclusive Agency Agreement ("EA Agreement") by unilaterally terminating the parties' relationship. But Calhoun conceded to material facts that show that Allstate had cause to terminate the EA Agreement. The EA Agreement defines cause to include "breach of th[e EA] Agreement" and provides that agents must "not establish any additional sales location without the prior written approval of the Company." The Exclusive Agency Independent Contractor Manual ("EA Manual"), which the EA Agreement expressly incorporates, further states that "approval must be obtained" for a "change of sales location" and for proposed sales locations that would share space with "another business." The EA Agreement's express incorporation of the EA Manual attached the EA Manual's obligations to the parties. *Weatherguard Roofing Co. v. D.R. Ward Constr. Co.*, 152 P.3d 1227, 1230 (Ariz. Ct. App. 2007). Thus, because Calhoun admitted that she relocated her Allstate sales office to a cubicle within the office of another business without

2

obtaining Allstate's approval, undisputed facts establish that Allstate had cause[1] to terminate her EA Agreement.[2]

2. In addition, the district court properly granted summary judgment in favor of Allstate on Calhoun's good faith and fair dealing claim. Neither of the two Allstate actions Calhoun challenges were breaches of the duty of good faith and fair dealing. Under Arizona law, "[t]he general rule is that an implied covenant of good faith and fair dealing cannot directly contradict an express contract term." *Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 434 (Ariz. Ct. App. 2002). And although Arizona law recognizes that there can be a breach of the duty of good faith and fair dealing even when a party "exercises discretion retained or unforeclosed under a contract," the party does not breach the duty unless the exercise of its retained discretion "den[ies] the other a reasonably expected benefit of the bargain." *Wells*

---

[1] Calhoun argues that, despite the unambiguous language of the EA Agreement, we should nonetheless consider extrinsic evidence about her prior office move and Allstate's common practices. We decline to consider parol evidence because it is being offered by Calhoun to "contradict or vary the meaning of the [EA Agreement]" and because a court applying Arizona law can refuse to credit extrinsic evidence if the contract's language is not "reasonably susceptible" to the interpretation asserted by the proponent of the evidence. *Taylor v. State Farm Mut. Auto Ins. Co.*, 854 P.2d 1134, 1140 (Ariz. 1993). We likewise reject Calhoun's arguments concerning waiver and modification, as they are contradicted by the EA Agreement's express terms.

[2] In the alternative, Calhoun argues that her "failure to acquire preapproval is only a breach of timing" and was thus an immaterial breach of the parties' agreement. We need not reach this argument, as Calhoun failed to preserve it for appeal. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

*Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 30 (Ariz. 2002) (quoting *Sw. Sav. & Loan Ass'n v. SunAmp Sys., Inc.*, 838 P.2d 1314, 1319 (Ariz. Ct. App. 1992)). Here, the EA Agreement and EA Manual unambiguously reserved to Allstate complete discretion to reject proposed sales locations as well as proposed transfers of economic interest. Calhoun does not offer any reason to suggest that Allstate's decisions were an abuse of this discretion or were motivated by a wrongful reason. Thus, Allstate did not deny Calhoun any reasonably expected benefit of the bargain by exercising its express rights to terminate the EA Agreement for cause and to refuse to approve Calhoun's proposed transfer of her economic interest to her husband.

3. Finally, the district court properly granted summary judgment in favor of Allstate with respect to whether Allstate tortiously interfered with Calhoun's contractual relationships with her customers and with her business expectancy in receiving payment from her customers. Both of Calhoun's claims fail because tortious interference claims require proof that the purportedly interfering party "acted improperly." *Wells Fargo*, 38 P.3d at 31. Allstate did not act improperly. As we have explained, neither Allstate's termination of the EA Agreement nor its refusal to approve Calhoun's proposed transfer of economic interest were wrongful.

**AFFIRMED.**