**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| G AND G CLOSED CIRCUIT EVENTS, LLC, | No. 21-56047 |
| *Plaintiff-Appellant*, | D.C. No. 2:19-cv-07896-WDK-JC |
| v. | |
| ZIHAO LIU, DBA Wave Hookah; WAVE HOOKAH, INC., DBA Wave Hookah, an unknown business entity, | OPINION |
| *Defendants-Appellees.* | |

Appeal from the United States District Court
for the Central District of California
William D. Keller, District Judge, Presiding

Argued and Submitted May 10, 2022
Pasadena, California

Filed August 22, 2022

Before: M. Margaret McKeown and Sandra S. Ikuta, Circuit Judges, and George B. Daniels,* District Judge.

Opinion by Judge McKeown

---

* The Honorable George B. Daniels, United States District Judge for the Southern District of New York, sitting by designation.

**SUMMARY**[**]

**Communications Law**

The panel affirmed, on an alternative ground, the district court's summary judgment in favor of the defendant in an action alleging that transmission of a pirated television program via Internet streaming, as opposed to via satellite or cable systems, violated the Cable Communications Policy Act, 47 U.S.C. § 553, and the Communications Act, 47 U.S.C. § 605.

The district court ruled that §§ 553 and 605 do not apply when a pirated program is transmitted via Internet streaming. The panel, however, concluded that the plaintiff, a middleman distributor of entertainment display rights, failed to meet its burden on summary judgment to provide evidence sufficient to demonstrate a genuine issue of material fact regarding the method of transmission of the program at issue. Accordingly, the panel declined to reach the merits and affirmed on that alternative ground.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Thomas P. Riley (argued), Law Offices of Thomas P. Riley P.C., South Pasadena, California, for Plaintiff-Appellant.

Trevor B. McCann (argued) and Ryan P. Harley, Collins & Collins LLP, Walnut Creek, California, for Defendants-Appellees.

**OPINION**

McKEOWN, Circuit Judge:

Television "signal piracy," that is, displaying television programs without the right to do so, has long been regulated by the Cable Communications Policy Act, 47 U.S.C. § 553 ("§ 553") and the Communications Act, 47 U.S.C. § 605 ("§ 605"). Those statutes clearly apply when the pirated program is transmitted via traditional satellite or cable systems. *See, e.g.*, *Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123 (2d Cir. 1996); *Cablevision of Michigan, Inc. v. Sports Palace, Inc.*, 27 F.3d 566 (6th Cir. 1994). G & G Closed Circuit Events, LLC ("G & G"), a middleman distributor of entertainment display rights, asks us to resolve a blockbuster question of first impression for the courts of appeals: Whether §§ 553 and 605 apply when the pirated program is transmitted via Internet streaming. The district court said "no," holding that the "[I]nternet defense" is dispositive. But on appeal, G & G's case never makes it past the opening credits. Because G & G failed to meet its burden on summary judgment to provide evidence sufficient to demonstrate a genuine issue of material fact regarding the method of transmission of the program at issue, we decline

to reach the merits and affirm the district court's grant of summary judgment on that alternative ground.

## BACKGROUND

G & G buys commercial distribution rights from entertainment producers and then sublicenses the rights to display televised sports and entertainment programs at commercial establishments such as bars, clubs, and restaurants. Here, G & G purchased exclusive commercial distribution rights to a televised boxing match (the "fight") and charged businesses between $2,800 and $14,000 for a sublicense. Wave Hookah ("Wave"), a hookah lounge in Van Nuys, California, displayed the fight to its customers on a September evening in 2018. Rather than sublicensing the fight from G & G, a Wave employee purchased it from digital media provider Flipps Media, Inc., for $84.99, and displayed the fight to guests on a laptop "via the [I]nternet." G & G sued Wave under §§ 553 and 605, alleging violations of those statutes' prohibitions on signal piracy. The district court granted summary judgment in favor of Wave, finding that §§ 553 and 605 did not regulate streaming over the Internet.

We do not reach this interesting and complicated question because the familiar summary judgment standard counsels upholding summary judgment on alternate grounds. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). We review de novo a district court's grant of summary judgment, considering the record in the light most favorable to the non-moving party. *Tschida v. Motl*, 924 F.3d 1297, 1302–03 (9th Cir. 2019). Where, as here, the party moving for summary judgment (Wave) has borne its initial burden to show that the nonmoving party (G & G) "does not have enough evidence of an essential element to carry its ultimate burden

of persuasion at trial," the nonmoving party then has the burden "to produce evidence to support its claim." *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102–03. Because G & G failed to produce evidence to support its claim after Wave carried its initial burden, summary judgment for Wave was appropriate. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

## ANALYSIS

## I.   THE SIGNAL PIRACY STATUTES

To explain why G & G failed to meet its burden on summary judgment, it is helpful to briefly lay out the signal piracy statutes at issue. To begin, § 553 concerns "cable systems." *See* 47 U.S.C. § 553(a). To be liable under § 553, Wave must have intercepted or received a "communications service offered over a cable system" without authorization. *Id.* § 553(a)(1). A "cable system" is defined for purposes of § 553 as "a facility, consisting of a set of closed transmission paths and associated signal generation, reception, and control equipment that is designed to provide cable service which includes video programming and which is provided to multiple subscribers within a community" with certain exceptions. *Id.* § 522(7).

Section 605, by contrast, prohibits the unauthorized interception, receipt, and use of "radio communications," including "satellite television signal piracy." *DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008); *see also* 47 U.S.C. § 605(a). To establish liability under § 605 here, Wave's display of the fight must have been a "radio communication" as it is defined under § 605 or otherwise involved a satellite television signal, *see DirecTV, Inc.*, 545 F.3d at 844 ("[T]he 'communications' protected by § 605(a) include satellite television signals."). "Radio

communication" for purposes of § 605 means "the transmission by radio of writing, signs, signals, pictures, and sounds of all kinds, including all instrumentalities, facilities, apparatus, and services (among other things, the receipt, forwarding, and delivery of communications) incidental to such transmission." 47 U.S.C. § 153(40).

Both the Supreme Court and the Ninth Circuit have acknowledged that transmissions over the Internet involve myriad technologies that may include both cable and satellite components. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 975 (2005) (explaining that Internet cable modem service "transmits data between the Internet and users' computers via the network of television cable lines owned by cable companies," and that Internet service may be provided by other "terrestrial- and satellite-based wireless networks"); *Brand X Internet Servs. v. F.C.C.*, 345 F.3d 1120, 1124 (9th Cir. 2003) ("[C]able modem service uses the network of coaxial cable employed to transmit television signals."), *rev'd on other grounds*, 545 U.S. 967 (2005). The "potentially intricate issues of overlap and distinction" between §§ 553 and 605 have not been clearly resolved in the Ninth Circuit. *Kingvision Pay-Per-View v. Lake Alice Bar*, 168 F.3d 347, 349 n.1 (9th Cir. 1999). Neither statute expressly references Internet streaming. *See* 47 U.S.C. §§ 553, 605.

## II. THE PARTIES' EVIDENCE AT SUMMARY JUDGMENT

In its summary judgment motion, Wave posited that because the lounge displayed the fight "via the [I]nternet" rather than via traditional satellite or cable transmissions, there could be no dispute that Wave's conduct fell outside the ambit of §§ 553 and 605. Wave supported its motion with declarations from the lounge owner and an employee that Wave purchased the fight from an Internet streaming

service and displayed the program by streaming it over the Internet.

G & G said, "not so fast," arguing that the signal piracy statutes *did* extend to programs transmitted over the Internet, and that Wave's discovery responses were inadequate because they failed to provide sufficient information for G & G to prosecute its claims under this theory. *See* Fed. R. Civ. P. 56(d). G & G supplied a declaration from counsel identifying gaps in Wave's discovery responses, which ostensibly prevented G & G from supporting its claims. For example, G & G noted that Wave had declined to respond to interrogatories regarding satellite or cable services employed by Wave, among other discovery deficiencies.

The district court agreed with G & G and deferred consideration of the summary judgment motion pursuant to its authority to do so when the nonmovant has shown that it cannot present facts "essential to justify its position." *Id.* The court reopened discovery for sixty days "in order for the parties to determine the method of transmission" of the fight and granted an additional ten days for supplemental briefing.

At the end of the sixty-day extension, however, G & G had taken *no* steps to participate in additional discovery or to compel any further response from Wave. Instead, G & G elected not to supplement its briefing and asked the court to consider Wave's summary judgment motion fully briefed and ready for consideration. The district court obliged. This time, the district court agreed with Wave and granted summary judgment on the grounds that the "[I]nternet defense" was "dispositive" and §§ 553 and 605 did not extend to "unauthorized broadcasts over the [I]nternet."

### III.    SUMMARY JUDGMENT WAS APPROPRIATE

The district court granted summary judgment, holding that the "Internet defense" absolved Wave of liability.  We agree that summary judgment was appropriate, albeit for the alternative, independent reason that G & G failed to bear its burden of production.  *Sully v. Ayers*, 725 F.3d 1057, 1067 (9th Cir. 2013) (a court of appeals may affirm the district court on any grounds the record supports).  Although the district court afforded G & G ample opportunity to pursue additional discovery to demonstrate how §§ 553 and 605 might encompass the Internet transmission at issue here, G & G sat on its hands.  For example, G & G produced no evidence that would address whether the fight was relayed by way of a "facility, consisting of a set of closed transmission paths" or "provided to multiple subscribers within a community," such that the fight could have been transmitted by way of a "cable system" within the meaning of § 553.  *See* 47 U.S.C. § 522(7) (defining "cable system"). Similarly, G & G produced no witnesses or documents to explain whether Wave's display of the program involved a "transmission by radio of writing, signs, signals, pictures, and sounds of all kinds" or otherwise involved a satellite transmission as would be required to establish liability under § 605.  *Id.* § 605(a).  And, remarkably, G & G undertook no discovery about the nature of the transmission to or from Flipps Media, Inc., the entity from which Wave purchased the fight.   For instance, G & G never offered evidence addressing whether Flipps itself obtained the fight from a satellite or cable provider, nor did G & G investigate the technology that Flipps used to transmit programming to its customers.

Thus, G & G ended discovery on a cliffhanger, offering at best conclusory statements about the fight's method of

transmission and the underlying technology. This posture made it impossible for the district court to undertake the basic exercise of comparing the facts of the case to the statutory language to assess whether §§ 553 or 605 regulate Wave's conduct.

## CONCLUSION

We note that on their face, §§ 553 and 605 do not provide for an "Internet defense" that automatically absolves an entity of liability, as the district court held. Rather, these statutes regulate specific methods of transmission. We affirm the district court's grant of summary judgment for Wave because G & G failed to meet its burden of production to establish that Wave's method of transmitting the fight comes within the ambit of §§ 553 or 605. The district court afforded G & G generous time to undertake additional discovery to provide the evidence necessary to ascertain the technical nature of the transmission at issue. Instead of taking that opportunity, G & G simply stopped the show and asked the district court to rule on the sparse record. Summary judgment for Wave was appropriate.[1]

**AFFIRMED.**

---

[1] Because we affirm the district court's dismissal of G & G's federal claims, we decline to reinstate G & G's pendent state-law claims. *See* 28 U.S.C § 1367(c)(3).